Lesley F. Portnoy, Esq. (SNB 304851)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310.201.9150
Facsimile: 310.201.9160
Email: lportnoy@glancylaw.com

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN G. CHEEHY, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EKSO BIONICS HOLDINGS, INC., THOMAS LOOBY and MAXIMILIAN SCHEDER-BIESCHIN,<br><br>Defendants. | Case No. 3:18-cv-00212-CRB<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Senior District Judge Charles R. Breyer<br>Date Action Filed:  January 10, 2018 |
| RIMON BEKHET, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EKSO BIONICS HOLDINGS, INC., THOMAS LOOBY, and MAXIMILIAN SCHEDER-BIESCHIN,<br><br>Defendants. | Case No. 3:18-cv-01726-CRB<br><br>Senior District Judge Charles R. Breyer<br>Date Action Filed:  January 2, 2018 |

1    Lead Plaintiff James Myers ("Plaintiff"), individually and on behalf of all other persons

2   similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's consolidated amended

3   complaint against Defendants, allege the following based upon personal knowledge as to Plaintiff

4   and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*,

5   the investigation conducted by and through Plaintiff's attorneys, which included, among other

6   things, a review of the Defendants' public documents, conference calls and announcements made

7   by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and

8   press releases published by and regarding Ekso Bionics Holdings, Inc. ("Ekso" or the

9   "Company"), analysts' reports and advisories about the Company, interviews with former

10  employees of Ekso ("Confidential Witnesses" or "CWs"), and information readily obtainable on

11  the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set

12  forth herein after a reasonable opportunity for discovery.

13                                **NATURE OF THE ACTION**

14       1.     This is a federal securities class action on behalf of a class consisting of all persons

15  and entities other than Defendants who purchased or otherwise acquired the publicly traded

16  securities of Ekso between March 15, 2017 and December 27, 2017, both dates inclusive (the

17  "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations

18  of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the

19  Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

20       2.     Ekso Bionics, Inc. manufactures wearable exoskeletons for use primarily in the

21  healthcare and industrial markets.  Its products are designed to assist patients who have suffered a

22  stroke or spinal cord injury, as well as industrial workers who engage in repetitive physical tasks.

23       3.     Throughout the Class Period, Defendants made a number of statements in their

24  public filings concerning the effectiveness of the Company's internal control over financial

25  reporting and disclosure controls and procedures.

26       4.     In truth, however, a material weakness existed in Ekso's internal controls for the

27  year and quarter ending December 31, 2016, and for all subsequent periods throughout the Class

28  Period, which Defendants did not disclose to the public or the Company's shareholders.

5.      On December 14, 2017, after the close of trading, Ekso filed a Form 8-K with the SEC, publicly disclosing that after consultation with its auditor, OUM Co. LLP, management concluded that the Company's internal control over financial reporting was not effective at December 31, 2016 and, accordingly, its disclosure controls and procedures were not effective at December 31, 2016 or for subsequent interim periods.

6.      On this news, shares of Ekso stock fell $0.15 per share, or 6.17%, from its previous closing price to close at $2.28 per share on December 15, 2017.

7.      Subsequently, on December 27, 2017, during aftermarket hours, Ekso filed with the SEC its amended annual report for 2016 and amended quarterly reports for the first three quarters of 2017, causing a further decline in Ekso stock of $0.34 per share, or over 13%, from its previous closing price to close at $2.23 per share on December 28, 2017, further damaging investors.

8.      By this action, Lead Plaintiff seeks redress for losses he and other Ekso investors suffered after purchasing common stock during the Class Period at artificially inflated prices.

**JURISDICTION AND VENUE**

9.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business in this Judicial District.

12.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Lead Plaintiff James Myers, as set forth in the Certification previously submitted to the Court, purchased Ekso securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Ekso designs, develops, and sells exoskeletons for use in the healthcare, industrial, military, and consumer markets in North America, Europe, the Middle East, and Africa. The Company is incorporated in Nevada and its principal executive offices are located at 1414 Harbour Way South, Suite 1201, Richmond, California 94804. Ekso's common stock is traded on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "EKSO."

15.     Defendant Thomas Looby ("Looby") was, during the Class Period, the Chief Executive Officer ("CEO") and President of Ekso. He resigned from his positions with Ekso, effective March 9, 2018.

16.     Defendant Maximilian Scheder-Bieschin ("Scheder-Bieschin") has been the Chief Financial Officer ("CFO") of Ekso since January 2014.

17.     Defendants Looby and Scheder-Bieschin are sometimes referred to herein as the "Individual Defendants."

18.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

19.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

20.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

21.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Ekso Bionics

22.     Ekso designs, develops, and sells exoskeleton technology for use primarily in the healthcare and industrial markets.  Specifically, Ekso develops "wearable exoskeletons," which, according to the Company, "are worn over clothing and are mechanically controlled by a trained operator to augment human strength, endurance, and mobility."

23.     The Company's EksoHealth division focuses on devices for the healthcare industry, providing exoskeletons targeted toward individuals with conditions affecting gait, such as those who have suffered a stroke or spinal cord injury.  Ekso's primary product, the Ekso GT, is, according to the Company's Annual Report on Form 10-K for the fiscal year ending December 31, 2017:

> a wearable bionic suit that allows our hospital and rehabilitation customers to provide in-patients and out-patients with spinal cord injury ("SCI") and hemiplegia due to stroke the ability to stand and walk over ground with a full weight-bearing, reciprocal gait using a cane, crutches or a walker under the supervision of a physical therapist. Walking is achieved by a user shifting their body to activate sensors in the device which in turn initiate steps. Battery-powered motors drive the legs, detecting the deficient neuromuscular function and providing that level of assistance necessary for a user to complete their step.

24.      The Company's EksoWorks division develops devices, such as the EksoZeroG to assist construction and industrial workers and reduce the stress and strain of physical activities.

25.     The Company was formed in 2005 as Berkeley ExoWorks, and became known as Ekso Bionics in 2012, the same year it began selling devices to customers.  The Company went public in 2014.

26.     As of the beginning of the Class Period, Ekso's revenues were derived primarily from sales of its medical devices.  In the fourth quarter of 2016, for example, revenues from its medical devices comprised 75% of its total device revenues for the quarter.[1]

### Ekso's Internal Controls During the Class Period

27.     The Exchange Act requires issuers like Ekso to keep books and records setting out the transactions in which it engages. Further, an issuer's system of internal controls requires that transactions be recorded as necessary to both prepare financial statements and compare transactions with assets at reasonable intervals. Specifically, the Exchange Act requires issuers to:

(A) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;

(B) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that—

[…]

(ii) transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets; [and]

[…]

(iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences […]

15 U.S.C. §78m(b)(2)(b).

---

[1]     See Ekso Bionics Company Overview March 2017, located at https://seekingalpha.com/article/4055873-ekso-bionics-holdings-ekso-presents-29th-annual-roth-conference

28.     A good system of internal controls helps management achieve its objectives related to the effectiveness and efficiency of its operations, the reliability of its financial reporting, and compliance with applicable laws and regulations. It is management's responsibility to develop and implement internal controls necessary to ensure that it maintains adequate books and records. This is made clear in SEC regulations as well as by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in *Internal Control—Integrated Framework* (the "COSO Report").[2]

29.     The COSO Report defines internal control as a process that is "designed to pro-vide reasonable assurance regarding the achievement of objectives" related to the "effectiveness and efficiency of operations, reliability of financial reporting, [and] compliance with applicable laws and regulations." More broadly, however, a system of internal control encompasses more than the policies governing the objectives related to operations, financial reporting, and compli-ance; namely, it includes the actions taken by a company's board of directors, management at all levels, and employees in running the business.

30.     The COSO Report requires that financial statements prepared for external purposes be "fairly presented in conformity with generally accepted or other relevant and appropriate accounting principles and regulatory requirements for external purposes." Consistent with generally accepted accounting principles, the COSO Report defines "fair presentation" as the following:

      a.  the accounting principles selected and applied have general acceptance;

      b.  the accounting principles are appropriate in the circumstances;

      c.  the financial statements are informative of matters that may affect their use, understanding and interpretation; and

      d.  the financial statements reflect the underlying transactions and events in a manner that presents the financial position, results of operations and cash flows stated

---

[2] The COSO report was issued in September 1992 as a four-volume set. An Addendum to Reporting to External Parties was issued in May 1994.

1   within a range of acceptable limits, that is, limits that are reasonable and practical to

2   attain in financial statements.[3]

3   31.   The COSO Report describes internal control as "consist[ing] of five interrelated

4   components" that "are derived from the way management runs a business, and are integrated with

5   the management process." The five components of an internal control framework that are needed

6   to enable a business to achieve its objectives are: (1) the control environment, (2) risk assessment,

7   (3) control activities, (4) information and communications and (5) monitoring.

8   32.   Under both the Exchange Act and the COSO Report, maintaining adequate internal

9   controls includes maintaining books and records setting out contemporaneous records of the

10  transactions in which the Company engaged.

11  33.   SEC rules also require management to evaluate a company's internal controls and

12  disclose every material weakness they are aware of. *See Management's Report on Internal Con-*

13  *trol Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports*,

14  68 Fed. Reg. 36636, 36639 (June 18, 2003).

15  **Ekso's Internal Controls During the Class Period Were Materially Deficient**

16  34.   On March 15, 2017, the Company filed a Form 10-K for the quarter and fiscal year

17  ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's year-

18  end financial results and position. For the quarter, Ekso reported a net loss of $5.58 million ($0.29

19  per diluted share) on revenue of $2.59 million, compared to a net loss of $4.65 million ($0.63 per

20  diluted share) on revenue of $1.94 million in the quarter ending December 31, 2015.  For the year,

21  Ekso reported a net loss of $23.47 million ($1.87 per diluted share) on revenue of $14.22 million,

22  compared to a net loss of $19.59 million ($1.66 per diluted share) on revenue of $8.66 million in

23  2015.

24  35.   The 2016 10-K also stated that the Company's internal control over financial

25  reporting and disclosure controls and procedures were effective as of December 31, 2016.

26

27  [3] *See* COSO Report at 35.

28

Defendants Looby and Scheder-Bieschin signed the 2016 10-K, certifying, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

36.     These statements concerning Ekso's internal controls in the 2016 10-K were materially false and/or misleading because they misrepresented and failed to disclose that: (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

37.     In the 2016 10-K, Ekso disclosed the following risk factors, in relevant part:

> ***Any failure to maintain effective internal control over our financial reporting could materially adversely affect us.***
>
> Section 404 of the Sarbanes-Oxley Act of 2002 requires us to include in our annual reports on Form 10-K and quarterly reports on Form 10-Q an assessment by management of the effectiveness of our internal control over financial reporting. We previously reported a material weakness in internal control over financial reporting related to the timing of the implementation of certain policies, processes and procedures that we have put in place since the Merger. Throughout 2014 and 2015, we continued to strengthen our internal control environment by implementing new policies, processes and procedures. Our remediation efforts, including the testing of these controls, continued into 2015. This material weakness was considered remediated in the fourth quarter of 2015, once these controls were shown to be operational for a sufficient period of time to allow management to conclude that these controls were operating effectively. In addition, our independent registered public accounting firm has reported on management's assessment of the effectiveness of such internal control over financial reporting as of December 31, 2016. While we believe that the policies, processes and procedures we put in place are sufficient to render our internal controls over financial reporting effective, our initiatives may not prove successful and in the future management may not be able to conclude that our internal control over financial reporting is effective. Furthermore, even if management were to reach such a conclusion, if our independent registered public accounting firm is not satisfied with the adequacy of our internal control over financial reporting, or if the independent auditors interpret the requirements, rules or regulations differently than we do, then (if required in the future) they may decline to attest to management's assessment or may issue a report that is qualified. Any of these events could result in a loss of investor confidence in the reliability of our financial statements, which in turn could negatively affect the price of our common stock.

In particular, we must perform system and process evaluation and testing of our internal control over financial reporting to allow management and our independent registered public accounting firm to report on the effectiveness of our internal control over financial reporting, as required by Section 404. Our compliance with Section 404 may require that we incur substantial accounting expense and expend significant management efforts.

38.     These risk factors were false and misleading because the risk had materialized with respect to Ekso's then present internal controls over financial reporting. Specifically, (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

39.     On May 9, 2017, the Company filed a Form 10-Q for the quarter ended March 31, 2017 (the "1Q 2017 10-Q") with the SEC, which provided the Company's first quarter 2017 financial results and position.  For the quarter, Ekso reported a net loss of $8.30 million ($0.38 per diluted share) on revenue of $1.44 million, compared to a net loss of $3.65 million ($0.44 per diluted share) for the same period in the previous year.

40.     The 1Q 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of March 31, 2017, and that "[t]here were no changes in our internal control over financial reporting that occurred during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting." Defendants Looby and Scheder-Bieschin signed the 1Q 2017 10-Q, appending SOX certifications by which Defendants Looby and Scheder-Bieschin certified the accuracy of financial reporting, the effectiveness of the Company's internal controls, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

41.     These statements concerning Ekso's internal controls in the 1Q 2017 10-Q were materially false and/or misleading because they misrepresented and failed to disclose that: (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

42.     The 1Q 2017 10-Q also states, under Item 2, "Management's Discussion and Analysis of Financial Condition and Results of Operations," that

> The following factors, among others, including those described in the section titled "Risk Factors" included in our Annual Report on Form 10-K for the year ended December 31, 2016, could cause our future results to differ materially from those expressed in the forward-looking information:
>
> …
>
> • Our ability to maintain adequate internal controls over financial reporting;

43.     The "Risk Factors" included in the 2016 10-K, incorporated in the 2017 1Q 10-Q, state, in relevant part:

> **_Any failure to maintain effective internal control over our financial reporting could materially adversely affect us._**
>
> Section 404 of the Sarbanes-Oxley Act of 2002 requires us to include in our annual reports on Form 10-K and quarterly reports on Form 10-Q an assessment by management of the effectiveness of our internal control over financial reporting. We previously reported a material weakness in internal control over financial reporting related to the timing of the implementation of certain policies, processes and procedures that we have put in place since the Merger. Throughout 2014 and 2015, we continued to strengthen our internal control environment by implementing new policies, processes and procedures. Our remediation efforts, including the testing of these controls, continued into 2015. This material weakness was considered remediated in the fourth quarter of 2015, once these controls were shown to be operational for a sufficient period of time to allow management to conclude that these controls were operating effectively. In addition, our independent registered public accounting firm has reported on management's assessment of the effectiveness of such internal control over financial reporting as of December 31, 2016. While we believe that the policies, processes and procedures we put in place are sufficient to render our internal controls over financial reporting effective, our initiatives may not prove successful and in the future management may not be able to conclude that our internal control over financial reporting is effective. Furthermore, even if management were to reach such a conclusion, if our independent registered public accounting firm is not satisfied with the adequacy of our internal control over financial reporting, or if the independent auditors interpret the requirements, rules or regulations differently than we do, then (if required in the future) they may decline to attest to management's assessment or may issue a report that is qualified. Any of these events could result in a loss of investor confidence in the reliability of our financial statements, which in turn could negatively affect the price of our common stock.

In particular, we must perform system and process evaluation and testing of our internal control over financial reporting to allow management and our independent registered public accounting firm to report on the effectiveness of our internal control over financial reporting, as required by Section 404. Our compliance with Section 404 may require that we incur substantial accounting expense and expend significant management efforts.

44.　These risk factors were false and misleading because the risk had materialized with respect to Ekso's then present internal controls over financial reporting. Specifically, (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

45.　On August 7, 2017, the Company filed a Form 10-Q for the quarter ended June 30, 2017 (the "2Q 2017 10-Q") with the SEC, which provided the Company's second quarter 2017 financial results and position.  For the quarter, Ekso reported a net loss of $5.51 million ($0.22 per diluted share) on revenue of $1.87 million, compared to a net loss of $5.77 million ($0.67 per diluted share) on revenue of $1.55 million same period the previous year.

46.　The 2Q 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of June 30, 2017, and that "[t]here were no changes in our internal control over financial reporting that occurred during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting." Defendants Looby and Scheder-Bieschin signed the 2Q 2017 10-Q, appending SOX certifications by which Defendants Looby and Scheder-Bieschin certified the accuracy of financial reporting, the effectiveness of the Company's internal controls, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

47.　These statements concerning Ekso's internal controls in the 2017 2Q 10-Q were materially false and/or misleading because they misrepresented and failed to disclose that: (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

48.   The 2Q 2017 10-Q also states, under Item 2, "Management's Discussion and Analysis of Financial Condition and Results of Operations," that

> The following factors, among others, including those described in the section titled "Risk Factors" included in our Annual Report on Form 10-K for the year ended December 31, 2016, could cause our future results to differ materially from those expressed in the forward-looking information:
>
> …
>
> • Our ability to maintain adequate internal controls over financial reporting;

49.   The "Risk Factors" included in the 2016 10-K, incorporated in the 2017 2Q 10-Q, state, in relevant part:

> ***Any failure to maintain effective internal control over our financial reporting could materially adversely affect us.***
>
> Section 404 of the Sarbanes-Oxley Act of 2002 requires us to include in our annual reports on Form 10-K and quarterly reports on Form 10-Q an assessment by management of the effectiveness of our internal control over financial reporting. We previously reported a material weakness in internal control over financial reporting related to the timing of the implementation of certain policies, processes and procedures that we have put in place since the Merger. Throughout 2014 and 2015, we continued to strengthen our internal control environment by implementing new policies, processes and procedures. Our remediation efforts, including the testing of these controls, continued into 2015. This material weakness was considered remediated in the fourth quarter of 2015, once these controls were shown to be operational for a sufficient period of time to allow management to conclude that these controls were operating effectively. In addition, our independent registered public accounting firm has reported on management's assessment of the effectiveness of such internal control over financial reporting as of December 31, 2016. While we believe that the policies, processes and procedures we put in place are sufficient to render our internal controls over financial reporting effective, our initiatives may not prove successful and in the future management may not be able to conclude that our internal control over financial reporting is effective. Furthermore, even if management were to reach such a conclusion, if our independent registered public accounting firm is not satisfied with the adequacy of our internal control over financial reporting, or if the independent auditors interpret the requirements, rules or regulations differently than we do, then (if required in the future) they may decline to attest to management's assessment or may issue a report that is qualified. Any of these events could result in a loss of investor confidence in the reliability of our financial statements, which in turn could negatively affect the price of our common stock.

In particular, we must perform system and process evaluation and testing of our internal control over financial reporting to allow management and our independent registered public accounting firm to report on the effectiveness of our internal control over financial reporting, as required by Section 404. Our compliance with Section 404 may require that we incur substantial accounting expense and expend significant management efforts.

50.     These risk factors were false and misleading because the risk had materialized with respect to Ekso's then present internal controls over financial reporting. Specifically, (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

51.     On November 8, 2017, the Company filed a Form 10-Q for the quarter ended September 30, 2017 (the "3Q 2017 10-Q") with the SEC, which provided the Company's third quarter 2017 financial results and position.  For the quarter, Ekso reported a net loss of $6.34 million ($0.18 per diluted share) on revenue of $1.60 million, compared to a net loss of $8.48 million ($0.60 per diluted share) on revenue of $1.60 million for the same period the previous year.

52.     The 3Q 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of September 30, 2017, and that "[t]here were no changes in our internal control over financial reporting that occurred during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting." Defendants Looby and Scheder-Bieschin signed the 3Q 2017 10-Q, appending SOX certifications by which Defendants Looby and Scheder-Bieschin certified the accuracy of financial reporting, the effectiveness of the Company's internal controls, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

53.     These statements concerning Ekso's internal controls in the 3Q 2017 10-Q were materially false and/or misleading because they misrepresented and failed to disclose that: (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

54.     The 3Q 2017 10-Q also states, under Item 2, "Management's Discussion and Analysis of Financial Condition and Results of Operations," that

> The following factors, among others, including those described in the section titled "Risk Factors" included in our Annual Report on Form 10-K for the year ended December 31, 2016, could cause our future results to differ materially from those expressed in the forward-looking information:
>
> …
>
> • Our ability to maintain adequate internal controls over financial reporting;

55.     The "Risk Factors" included in the 2016 10-K, incorporated in the 2017 3Q 10-Q, state, in relevant part:

> **_Any failure to maintain effective internal control over our financial reporting could materially adversely affect us._**
>
> Section 404 of the Sarbanes-Oxley Act of 2002 requires us to include in our annual reports on Form 10-K and quarterly reports on Form 10-Q an assessment by management of the effectiveness of our internal control over financial reporting. We previously reported a material weakness in internal control over financial reporting related to the timing of the implementation of certain policies, processes and procedures that we have put in place since the Merger. Throughout 2014 and 2015, we continued to strengthen our internal control environment by implementing new policies, processes and procedures. Our remediation efforts, including the testing of these controls, continued into 2015. This material weakness was considered remediated in the fourth quarter of 2015, once these controls were shown to be operational for a sufficient period of time to allow management to conclude that these controls were operating effectively. In addition, our independent registered public accounting firm has reported on management's assessment of the effectiveness of such internal control over financial reporting as of December 31, 2016. While we believe that the policies, processes and procedures we put in place are sufficient to render our internal controls over financial reporting effective, our initiatives may not prove successful and in the future management may not be able to conclude that our internal control over financial reporting is effective. Furthermore, even if management were to reach such a conclusion, if our independent registered public accounting firm is not satisfied with the adequacy of our internal control over financial reporting, or if the independent auditors interpret the requirements, rules or regulations differently than we do, then (if required in the future) they may decline to attest to management's assessment or may issue a report that is qualified. Any of these events could result in a loss of investor confidence in the reliability of our financial statements, which in turn could negatively affect the price of our common stock.
>
> In particular, we must perform system and process evaluation and testing of our internal control over financial reporting to allow management and our independent

registered public accounting firm to report on the effectiveness of our internal control over financial reporting, as required by Section 404. Our compliance with

Section 404 may require that we incur substantial accounting expense and expend significant management efforts.

56.    These risk factors were false and misleading because the risk had materialized with respect to Ekso's then present internal controls over financial reporting. Specifically, (1) there was a material weakness in Ekso's internal control over financial reporting and Ekso's disclosure controls and procedures were not effective; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Emerges

57.    At 5:21 p.m. on December 14, 2017, after the close of trading, Ekso filed a Form 8-K with the SEC stating "that the Company's internal control over financial reporting was not effective at December 31, 2016 and, accordingly, its disclosure controls and procedures were not effective at December 31, 2016 or for subsequent interim periods," stating in pertinent part:

**Item 8.01 Other Events**

On December 8, 2017, OUM & Co. LLP ("OUM") notified Ekso Bionics Holdings, Inc. (the "Company") that it had concluded that its report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 should no longer be relied upon and that a material weakness in the Company's internal control over financial reporting existed as of such date. This material weakness has not resulted in a restatement of the Company's consolidated financial statements or footnote disclosures for any periods through and including the fiscal year ended December 31, 2016.

OUM has reconfirmed its unqualified opinion on the fairness of the Company's financial statements included in the Annual Report on Form 10-K for the year ended December 31, 2016 (the "2016 10-K").

As part of its original audit of the Company's financial statements included in the 2016 10-K, OUM assessed the Company's internal control over financial reporting as of December 31, 2016. At that time, OUM and the Company concluded that the Company maintained effective internal control over financial reporting as of December 31, 2016.

Subsequent to the issuance of the 2016 10-K, the Public Company Accounting Oversight Board conducted an inspection of OUM's 2016 audit of the Company. As a result, OUM reevaluated the Company's information technology (IT) general

controls, and has now concluded that a "material weakness" existed as of December 31, 2016.

As a result of the identified material weakness, OUM has performed additional testing on the Company's financial statements as of and for the year ended December 31, 2016 to reconfirm their opinion on the fairness of the financial statements included in the 2016 10-K without reliance on the effectiveness of the Company's internal controls. As noted above, OUM has now reconfirmed its unqualified opinion on the fairness of the Company's financial statements included in the 2016 10-K.

***After consultation with OUM, management has now concluded that the Company's internal control over financial reporting was not effective at December 31, 2016 and, accordingly, its disclosure controls and procedures were not effective at December 31, 2016 or for subsequent interim periods.*** As a natural course of business, management has, over the course of 2017, been working to further strengthen its internal controls. Specifically, the Company has implemented a more robust accounting and enterprise resource planning system with software provided by Infor (which became operational in October 2017).

We plan to amend our Annual Report on Form 10-K for the fiscal year ended December 31, 2016 and our Quarterly Reports on Form 10-Q for the periods ended March 31, 2017, June 30, 2017 and September 30, 2017 to reflect the conclusion by management that there was a material weakness in internal control over financial reporting and that our disclosure controls and procedures were not effective as of the end of the periods covered by these reports. OUM's auditor's report on the Company's internal control over financial reporting will also be revised to state that the Company's internal control over financial reporting at December 31, 2016 was not effective.

The Company's Audit Committee as well as senior management discussed the matters described in this Item 8.01 with representatives of OUM. (Emphasis added).

58.     On this news, shares of Ekso fell $0.15 per share, or 6.17%, from its previous closing price to close at $2.28 per share on December 15, 2017, damaging investors.

59.     Then, on December 27, 2017, during aftermarket hours, Ekso filed with the SEC its amended annual report for 2016 and amended quarterly reports for the first three quarters of 2017.

60.     In the amended 2016 10-K, the Company stated the following:

**EXPLANATORY NOTE**

As previously disclosed in Item 8.01 of our Current Report on Form 8-K filed on December 14, 2017, our independent registered public accounting firm, OUM & Co. LLP ("OUM") notified management and the Audit Committee of Ekso Bionics

Holdings, Inc. (the "Company") that it had concluded that its report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 should no longer be relied upon and that a material weakness in the Company's internal control over financial reporting existed as of such date.

We note that no restatement of the Company's consolidated financial statements or footnote disclosures for any periods through and including the fiscal year ended December 31, 2016 has occurred.

As part of its original audit of the Company's financial statements included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2016 (the "Original Filing"), OUM assessed the Company's internal control over financial reporting as of December 31, 2016. At that time, OUM and the Company concluded that the Company maintained effective internal control over financial reporting as of December 31, 2016.

Subsequent to the issuance of the Original Filing, the Public Company Accounting Oversight Board conducted an inspection of OUM's 2016 audit of the Company. As a result, OUM reevaluated the Company's information technology (IT) general controls, and has now concluded that a "material weakness" existed as of December 31, 2016.

After consultation with OUM, management also concluded that the Company's internal control over financial reporting was not effective at December 31, 2016 and, accordingly, its disclosure controls and procedures were not effective at December 31, 2016.

61.     The Company further stated:

The Company's management assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 based on the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission in *Internal Control—Integrated Framework (2013)*. The Company's management believes that based on this criteria, as of December 31, 2016, there was a material weakness in the Company's information technology general controls. Specifically, our design and maintenance of processes and procedures that restrict access to key financial systems and records to appropriate users did not ensure there was adequate segregation of duties, and our compensating controls, including management oversight, could not be sufficiently demonstrated by evidence to overcome this weakness.

62.     The Company's amended 10-Qs for the quarters ending March 31, 2017, June 30, 2017, and September 30, 2017, contained identical disclosures.

63.     On this news, shares of Ekso fell $0.34 per share, or over 13%, from its previous closing price to close at $2.23 per share on December 28, 2017, further damaging investors.

64.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Insider Sales**

65.     During the Class Period, Russ Angold, President of Ekso Labs, sold over 300,000 shares of Ekso stock, reaping nearly $575,000 in total proceeds.  On August 11, 2017, Angold sold 100,000 shares at $1.50 per share; on August 14, 2017, Angold sold 71,746 shares at $1.59 per share; on August 15, 2017, Angold sold 50,000 shares at $1.59 per share; on August 16, 2017, Angold sold 28,254 shares at $1.53 per share; on August 23, 2018, Angold sold 9,352 shares at $1.33 per share; and on November 22, 2017, Angold sold 50,000 shares at $3.51 per share.

66.     By contrast, Angold sold no shares of Ekso stock during the two years preceding the Class Period.

67.     The last transaction, on November 22, 2017, was just two weeks before the Company disclosed that it would be amending its periodic reports during the Class Period due to a material weakness in its internal controls.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

68.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Ekso during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

69.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ekso securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may

1  be identified from records maintained by the Company or its transfer agent and may be notified of

2  the pendency of this action by mail, using the form of notice similar to that customarily used in

3  securities class actions.

4      70.    Plaintiff's claims are typical of the claims of the members of the Class as all

5  members of the Class are similarly affected by Defendants' wrongful conduct in violation of

6  federal law that is complained of herein.

7      71.    Plaintiff will fairly and adequately protect the interests of the members of the Class

8  and has retained counsel competent and experienced in class and securities litigation. Plaintiff has

9  no interests antagonistic to or in conflict with those of the Class.

10      72.    Common questions of law and fact exist as to all members of the Class and

11  predominate over any questions solely affecting individual members of the Class. Among the

12  questions of law and fact common to the Class are:

13      •    whether the federal securities laws were violated by Defendants' acts as alleged

14      herein;

15      •    whether statements made by Defendants to the investing public during the Class

16      Period misrepresented material facts about the financial condition, business,

17      operations, and management of the Company;

18      •    whether Defendants' public statements to the investing public during the Class

19      Period omitted material facts necessary to make the statements made, in light of the

20      circumstances under which they were made, not misleading;

21      •    whether the Individual Defendants caused the Company to issue false and

22      misleading SEC filings and public statements during the Class Period;

23      •    whether Defendants acted knowingly or recklessly in issuing false and misleading

24      SEC filings and public statements during the Class Period;

25      •    whether the prices of Ekso securities during the Class Period were artificially

26      inflated because of the Defendants' conduct complained of herein; and

27      •    whether the members of the Class have sustained damages and, if so, what is the

28      proper measure of damages.

73.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

74.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### APPLICATION OF PRESUMPTION OF RELIANCE; FRAUD ON THE MARKET

75.     Plaintiff will rely on the presumption of reliance established by the fraud on the market doctrine. At all relevant times, the market for Ekso's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Ekso's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ekso's securities and market information relating to Ekso, and have been damaged thereby.

76.     During the Class Period, the artificial inflation of Ekso's stock was caused by the material misrepresentations and/or omissions particularized in this Amended Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ekso's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Ekso and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

77.     At all relevant times, the market for Ekso's securities was an efficient market for the following reasons, among others:

    a.   Ekso stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

    b.   As a regulated issuer, Ekso filed periodic public reports with the SEC and/or the NASDAQ;

    c.   Ekso regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

    d.   Ekso was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

78.     As a result of the foregoing, the market for Ekso's securities promptly digested current information regarding Ekso from all publicly available sources and reflected such information in Ekso's stock price. Under these circumstances, all purchasers of Ekso's securities during the Class Period suffered similar injury through their purchase of Ekso's securities at artificially inflated prices and a presumption of reliance applies.

79.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the

importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

80.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

81.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

82.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

83.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Ekso securities during the Class Period.

84.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

85.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

86.     As a result of the foregoing, the market price of Ekso securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Ekso securities during the Class Period in purchasing Ekso securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

87.     Had Plaintiff and the other members of the Class been aware that the market price of Ekso securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Ekso securities at the artificially inflated prices that they did, or at all.

88.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

89.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the

Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Ekso securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

90.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

92.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

93.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Ekso securities.

94.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed

1    the power to control the specific activities which comprise the primary violations about which

2    Plaintiff and the other members of the Class complain.

3        95.     By reason of the above conduct, the Individual Defendants are liable pursuant to

4    Section 20(a) of the Exchange Act for the violations committed by the Company.

5                                    **PRAYER FOR RELIEF**

6        WHEREFORE, Plaintiff demands judgment against Defendants as follows:

7        A.     Determining that the instant action may be maintained as a class action under Rule

8    23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

9        B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason

10   of the acts and transactions alleged herein;

11       C.     Awarding Plaintiff and the other members of the Class prejudgment and post-

12   judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

13       D.     Awarding such other and further relief as this Court may deem just and proper.

14                                **DEMAND FOR TRIAL BY JURY**

15       Plaintiff hereby demands a trial by jury.

16

17   Dated: August 14, 2018                    **GLANCY PRONGAY & MURRAY LLP**

18

19                                             By: *s/ Lesley F. Portnoy*
                                               Lesley Portnoy
20                                             1925 Century Park East, Suite 2100
                                               Los Angeles, CA 90067
21                                             Telephone: (310) 201-9150
                                               Facsimile: (310) 201-9160
22                                             Email: lportnoy@glancylaw.com

23                                             **THE ROSEN LAW FIRM, P.A.**
                                               Laurence M. Rosen, Esq. (SBN 219683)
24                                             355 South Grand Avenue, Suite 2450
                                               Los Angeles, CA 90071
25                                             Telephone: (213) 785-2610
                                               Facsimile: (213) 226-4684
26                                             Email: lrosen@rosenlegal.com

27

28

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 14, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 14, 2018, at Los Angeles, California.


*s/ Lesley F. Portnoy*
Lesley F. Portnoy

# Mailing Information for a Case 3:18-cv-00212-CRB Cheehy v. Ekso Bionics Holdings, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jacob Alexander Goldberg**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **Nicholas Ethan Ham**
  nham@mofo.com,loraine-lontayao-5091@ecf.pacerpro.com,llontayao@mofo.com,nicholas-ham-4276@ecf.pacerpro.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Lesley F. Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com

- **Darryl Paul Rains**
  drains@mofo.com,darryl-rains-5289@ecf.pacerpro.com,donna-gillis-3037@ecf.pacerpro.com,dgillis@mofo.com

- **Avraham Noam Wagner**
  avi@thewagnerfirm.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)